## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

SONIA MORENO-AVALOS,              )
                                  )
Plaintiff,                        )
                                  )
vs.                               ) CAUSE NO. 2:16-cv-172
                                  )
CITY OF HAMMOND INDIANA,          )
*et al.*,                         )
                                  )
Defendants.                       )

## OPINION AND ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment, filed by Defendant, City of Hammond, Indiana, and Kim Nordhoff, in her individual capacity, on July 24, 2017 (DE #80). For the reasons set forth below, the motion is **GRANTED**. The regulatory taking claim is dismissed because it is barred by the *Rooker-Feldman* doctrine, and the remaining claims against Defendants, City of Hammond, Indiana and Kim Nordhoff, are dismissed because they are barred by claim preclusion. The Clerk is **ORDERED** to **CLOSE** this case.

BACKGROUND

This case centers around the rental property at 551 Gostlin Street in Hammond, Indiana, which was owned by Plaintiff, Sonia Moreno-Avalos. The property lapsed into disrepair and became the

subject of municipal code violations. Over a five-year period, Plaintiff disputed the code violations, and appeared in Hammond City Court and the Hammond Board of Public Works and Safety (either in person or by counsel), to challenge them.

Plaintiff filed her first complaint on January 23, 2013, pursuant to 42 U.S.C. § 1983 in district court against "City Hall of Hammond, Indiana, Kurt Koch, Kim Nordhoff, and Darren Taylor," under Case No. 2:13-cv-38-JVB-APR (Defs. Ex. H, the "038 Action"). In that complaint, she alleged she complained to the Mayor about the conduct of Hammond Code Enforcement inspector Kim Nordhoff, asserting Nordhoff stalked her and interfered with her landlord-tenant relationships. (*Id.* ¶¶ 11-18, 21-26.) She also alleged Koch retaliated against her by having her property declared an unsafe building and making false statements. (*Id.* ¶ 4.) On August 21, 2013, Judge Van Bokkelen dismissed Plaintiff's complaint for lack of personal jurisdiction due to failure to serve. (Ex. H at 5.)

Plaintiff filed another section 1983 action in district court on September 26, 2013, against the same defendants plus Mr. Dabertin and Mayor McDermott. That matter was assigned to Judge Theresa Springmann under Case No. 2:13-cv-347-TLS-PRC (Ex. I, "347 Action"). Plaintiff brought many of the same allegations, including her claim that defendants retaliated against her by ordering her Gostlin Street property to be demolished, that she had been stalked by Nordhoff, harassed by the other defendants in retaliation for

2

her report of Nordhoff's alleged harassment, and that Koch made false statements about the condition of her building. (*Id.* ¶¶ 32-33, 19, 47.)  While this action remained pending, Plaintiff filed a third section 1983 complaint in district court against the defendants, under Case No. 2:13-cv-00450-JTM-PRC (Ex. J, "450 Action").  Plaintiff reiterated her previous claims against the same defendants, alleging harassment, false statements, tortious interference with a business relationship, breach of contract, and stalking. (*Id.*)  Judge Springmann consolidated this action with the 347 Action pending before her.  (Ex. I, J.)

On August 22, 2014, the defendants filed their motion for judgment on the pleadings.  Judge Springmann granted that motion and entered judgment on the pleadings in Cases 347 and 450 (Ex. I).  Plaintiff did not appeal the decision.

On May 16, 2016, Plaintiff filed a pro se complaint in this case.  She obtained counsel and was granted leave to file a Second Amended Complaint on October 11, 2016 (DE #42-1).

Defendants, Thomas McDermott, Tom Dabertin, Kim Nordhoff, Kurt Koch, and Darren Taylor moved for partial dismissal for failure to state a claim, and on January 4, 2017, this Court granted that motion (DE #63).  The case then remained pending against Defendant, the City of Hammond, Indiana, and Counts IV, V, and VII remained pending against Defendant Nordhoff in her individual capacity.

The instant motion for summary judgment was filed by

Defendants, the City of Hammond and Kim Nordhoff, based upon principles of res judicata/claim preclusion, the applicable statute of limitations, the *Monell* doctrine, and qualified immunity.

Undisputed Facts

The Court notes that Defendants have submitted a Statement of Undisputed Material Facts, with citations to evidence in the record, including several affidavits (authenticating the Hammond Board of Public Works and Safety's record concerning the several board hearings held about the Gostlin St. property), and certified copies of the court dockets. (DE #82-1, 82-2-34.) In response, Plaintiff has failed to submit any Statement of Genuine Disputes, and has failed to properly assert that Defendants' facts are genuinely disputed.

Plaintiff attached as exhibits: an affidavit by Rodolfo Herrera dated April 18, 2013, stating he signed a contract with Plaintiff to put a new roof on her property, however, the Code Enforcement Department refused to provide the requested building permits(DE #84-3) (but Herrera does not say why he was denied a building permit)[1]; an affidavit of Victoriano Pacheco, which states he installed electrical and wiring service at the Gostlin Street

_____

[1] The Herrera affidavit was also attached to Plaintiff's previous complaint, considered by Judge Springmann in her earlier opinion and order dated January 30, 2015. (DE #82-83 at 16, 41, 95.)

4

property in March of 2000 and that it was inspected and approved by a Hammond inspector named Bob (10 years before Nordhoff's inspections), and that the property was "in a safe structural condition" (DE #84-4); defendant's response in opposition to plaintiff's motion to amend complaint (DE #84-1), the Court's order granting the motion to amend because "Plaintiff [who was previously pro se] deserves a chance to plead her case with her lawyer's help" (DE #84-2); a Notice of Municipal Ordinance Violation dated May 14, 2010, in which Plaintiff has underlined the municipal requirement that "[t]he roof is tight and has no defects which admit rain" (DE #84-5), a bank loan statement (DE #84-6); a letter from Chase Bank concerning insurance claims fund (DE #84-7); pictures of the property (DE #84-8), and a portion of the Indiana Unsafe Building statute (DE #84-10).

Local Rule 56-1 requires that a party opposing summary judgment file a response brief within 28 days after being served the motion and that the "response brief or its appendix must include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary." N.D. IND. L.R. 56-1.(b). Plaintiff has not done so. Instead, she filed an "Objection to Defendants' Statement of Material Facts" (DE #85), in which she lists her vague objections (without citations to any evidence or anything in the record) to the completeness and

accuracy of Defendants' statement of facts. This runs contrary to
the federal rules which provide that "[a] party asserting that a
fact cannot be or is genuinely disputed must support the assertion"
either by "citing to particular parts of materials in the record"
or "showing that the materials cited do not establish the absence
or presence of a genuine dispute, or that an adverse party cannot
produce admissible evidence to support the fact." Fed. R. Civ. P.
56(c). As this Court has noted before, "[i]t is within the Court's
province to require parties to adhere to the local rules and strike
non-conforming filings." *Cunningham v. State Farm Ins. Co.*, No.
2:04-CV-62, 2005 WL 3279365, at *1 (N.D. Ind. Dec. 2, 2005) (citing
*Schrott v. Bristol-Meyers Squibb Co.*, 403 F.3d 940 (7th Cir.
2005)). Defendants have not moved to strike Plaintiff's response;
therefore, the Court will consider it. However, because Plaintiff
has failed to submit a proper Statement of Genuine Issues, and has
failed to properly controvert Defendants' statement of undisputed
facts, the facts as set forth by Defendants will be deemed
admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-
19 (7th Cir. 2015); *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809,
818 (7th Cir. 2004).

The undisputed facts as set forth by the Defendants are as
follows:

Sonia Moreno-Avalos owned a rental property at 551 Gostlin
Street in Hammond, Indiana. (*See* Affidavit of Kim Nordhoff,

attached as Exhibit A, ¶3.)  On May 11, 2010, Hammond inspector Kim Nordhoff inspected the 551 Gostlin property and took photographs of the building's exterior. (Ex. A, ¶2.)

On May 14, 2010, a notice of municipal ordinance violation was sent to Moreno-Avalos, notifying her that the condition of her property violated several municipal ordinances, including lack of a "tight" roof; and she was ordered to bring the property into compliance with the ordinances by repairing the defects within ten (10) days of the issuance of the notice. This matter was set for hearing on June 16, 2010 in the Hammond City Court. (Ex. A, ¶4, and Ex. A-1 attached thereto.)

On June 28, 2010, the Hammond City Court ordered Moreno-Avalos to appear on July 14, 2010 in connection with these ordinance violations under cause No. 45H04-1005-OV-52851 ("City Court 851 Action"). (*See* certified Hammond City Court Docket for Cause No. 45H04-1005-OV-52851, attached as Exhibit E.)

The matter was subsequently continued multiple times and another order to appear was issued on August 16, 2010. (Ex. E, see entries dated 7/16/2010, 8/16/2010, 9/13/2010, 9/20/2010.)  On October 15, 2010, a default judgment was entered against Moreno-Avalos in Hammond City Court regarding the ordinance violations for which she was cited. (Ex. E, entry of 10/15/2010.)

On April 20, 2011, Moreno-Avalos was notified of municipal ordinance violations regarding her property and was summoned to

7

court for a hearing on May 19, 2011 under Cause No. 45H04-1105-OV-52897 ("City Court 897 Action"). (*See* certified Hammond City Court Records for Cause No. 45H04-1105-OV-52897, attached as Exhibit F, Bates stamped pp. 33-34, City of Hammond Notice of Municipal Ordinance Violation Citation and Summons to Court.)

 On May 17, 2011, Attorney David Weigle entered an appearance for Moreno-Avalos and moved to set aside default judgment in the City Court 851 Action on the basis of alleged lack of notice; and on May 18, 2011, the Hammond City Court set aside the default judgment. (*See* Affidavit of Kristina Kantar, attached as Exhibit D, ¶2 and Exhibit D-1 attached thereto; see also Exhibit E generally.) On May 19, 2011, the Hammond City Court scheduled a hearing in the City Court 897 Action for June 23, 2011. (Ex. F, p. 27.)

On June 23, 2011, the Hammond City Court held a status conference in the City Court 897 Action and set a trial date of September 29, 2011, regarding Moreno-Avalos's municipal ordinance citations. (Ex. F, p. 28.) On July 11, 2011, inspector Kim Nordhoff prepared a list of municipal ordinance violations based on her previous inspections. (*See* Ex. A, ¶5, and Ex. A-2 attached thereto.) On September 29, 2011, the trial in the City Court 897 Action was continued to November 3, 2011; and on November 3, 2011, the trial was reset for December 8, 2011. (Ex. F, p. 2.)

On December 7, 2011, a notice of violation was mailed to Moreno-Avalos notifying her that her property was inspected and

found to be an unsafe building in violation of Indiana Code 36-7-9 *et seq*. and Sections 150, 96, and 160 of the Hammond City Code. Moreno-Avalos was also notified of the City's intention to demolish the building within thirty days. (*See* Affidavit of Kevin C. Smith attached as Exhibit C, ¶3 and Exhibit C-1 attached thereto.) A hearing on the notice of intent to demolish was set for January 12, 2012 before the Hammond Board of Public Works and Safety ("Board"). The notice provided that if Moreno-Avalos failed to appear for the hearing, the notice would automatically be considered a demolition order, subject to execution by the City. (Ex. C-1.) On December 8, 2011, the Hammond City Court trial in the 897 Action was vacated. (Ex. F, p. 2.)

On December 20, 2011, Attorney Weigle appeared for Moreno-Avalos before the Board and requested that the hearing be continued to February 23, 2012. (See Ex. C, ¶4 and Ex. C-2 attached thereto.)

On January 23, 2012, Kevin Smith, attorney for the City of Hammond, wrote to advise attorney Weigle that the Board hearing on the proposal to demolish the Gostlin Street property was continued to April 12, 2012. (*See* Ex. C, ¶5 and Ex. C-3 attached thereto.)

On February 7, 2012, Moreno-Avalos filed for bankruptcy under Chapter 13 of the U.S. Bankruptcy Code. (Case No. 12-04247, "Bankruptcy Action".) (*See* certified docket from U.S. Bankruptcy Court for the Northern District of Illinois, Case No. 12-04247, attached as Exhibit G, pp. 1-2, DE #1.)

On April 12, 2012, the Hammond Board of Public Works & Safety ("Board") continued the demolition hearing on the 551 Gostlin property. (*See* Affidavit of Lynn Laviolette attached as Exhibit B, and Exhibit B-1, pp. 3-4 attached thereto.)

On May 2, 2012, the Hammond City Court continued the 897 Action for status. (Ex. F, p. 2.) On May 3, 2012, the City of Hammond mailed Moreno-Avalos an order to appear for the May 30, 2012 status hearing in the City Court 897 action. (Ex. F, p. 21.)

On May 23, 2012, attorney Wheeler (plaintiff's bankruptcy counsel) filed a motion for damages against the City of Hammond for alleged violation of the stay in bankruptcy. (Ex. G, p. 5, D.E. 33.) On June 25, 2012, the City of Hammond filed a response to Moreno-Avalos's motion for damages in the bankruptcy action. (Ex. G, p. 6, DE #40-41.) On July 26, 2012, the Board hearing was continued to September 20, 2012, inasmuch as Moreno-Avalos's bankruptcy action remained pending. (Ex. B and Ex. B-2, p. 2 attached thereto).

On July 30, 2012, attorney Smith wrote to advise attorney Weigle that the hearing regarding the 551 Gostlin property was continued to September 20, 2012. (*See* Ex. C, ¶6 and Ex. C-4 attached thereto.)

An evidentiary hearing was held in the U.S. Bankruptcy Court for the Northern District of Illinois on August 6, 2012, at which Moreno-Avalos appeared in person and by counsel. Following that

hearing, the Court (Judge Timothy Barnes) determined that the automatic stay did not foreclose the City's regulatory actions; and it denied plaintiff's motion to recover monetary damages. (Ex. G, pp. 6-7, DE #48-49.)

On September 20, 2012, the Board hearing was continued to January 24, 2013, for status, inasmuch as Moreno-Avalos's bankruptcy action remained pending. (Ex. B and Ex. B-3, pp. 2-3 attached thereto.)

On January 23, 2013, Moreno-Avalos filed her first 42 U.S.C. § 1983 complaint in U.S. District Court against City Hall of Hammond, Indiana [City of Hammond], Kurt Koch, Kim Nordhoff, and Darren Taylor, under Case No. 2:13-cv-038-JVB-APR (the "038 Action"). (*See* certified docket and selected filings from the 038 Action attached as Exhibit H, Bates stamped pp. 1-2.)

In the January 23, 2013 complaint, Moreno-Avalos alleged that she complained to Mayor McDermott and his assistant, Tom Dabertin, about the conduct of Hammond inspector Kim Nordhoff, to-wit, that Nordhoff had supposedly "stalked" her (Ex. H, p. 7, ¶ III); and that Nordhoff had purportedly interfered in Moreno-Avalos's landlord-tenant relationship with existing tenants. (Ex. H, pp. 11-12, ¶¶ 11-18, 21-26.) Moreno-Avalos also alleged that Mr. Koch had "retaliated" against her by having her property declared an unsafe building and by supposedly making "false statements" about her having an unsafe building. (Ex. H, pp. 7-8, ¶ IV.)

On January 24, 2013, the Board hearing was continued to April 25, 2013, inasmuch as Moreno's bankruptcy action remained pending. (Ex. B and Ex. B-4, p. 2 attached thereto.)

On January 28, 2013, attorney Smith wrote to attorney Weigle to advise that the Board hearing was continued to April 25, 2013. (Ex. C, ¶7 and Ex. C-5 attached thereto.) On April 25, 2013, the Board hearing was continued to June 27, 2013, inasmuch as Moreno-Avalos's bankruptcy action remained pending. (Ex. B and Ex. B-5, p. 4 attached thereto.) On April 29, 2013, attorney Smith wrote to attorney Weigle to advise that the Board hearing was continued to June 27, 2013. (Ex. C, ¶8 and Ex. C-6 attached thereto.)

On August 21, 2013, Judge Van Bokkelen dismissed plaintiff's complaint against the Hammond Defendants in the 038 Action for lack of personal jurisdiction because the defendants were not properly served. (Ex. H, p. 5, DE #36.) On September 20, 2013, the bankruptcy trustee filed a motion to dismiss Moreno-Avalos's bankruptcy action for her failure to make plan payments. (Ex. G, p. 7, DE #51.)

On September 26, 2013, Moreno-Avalos filed a second § 1983 action in the district court against the same defendants, adding Mr. Dabertin and Mayor McDermott as co-defendants (collectively "Hammond Defendants"), under Case No. 2:13-cv-347-TLS-PRC (the "347 Action"). (*See* certified docket and selected filings in the 347 Action attached as Exhibit I, Bates stamped pp. 1-3.) In her second

complaint, Moreno-Avalos again asserted that defendants had "retaliated" against her by ordering her Gostlin Street property demolished (Ex. I, p. 24, ¶ I); that she had been stalked by Ms. Nordhoff; that she had been harassed by Nordhoff and the other defendants in "retaliation" for plaintiff's report of Nordhoff's alleged harassment (Ex. I, p. 25, ¶ II; p. 27, ¶19; p. 30, ¶47); and that Mr. Koch made "false statements" about the condition of her building. (Ex. I, p. 25, ¶II; p. 28, ¶33; *see also* Complaint generally, Ex. I, pp. 21-30.)

On October 21, 2013, the bankruptcy court entered an order dismissing Moreno-Avalos's bankruptcy action for failure to make plan payments and she was notified of the order dismissing the bankruptcy action. (Ex. G, p. 8 DE #56-57.)

On December 6, 2013, Moreno-Avalos filed another § 1983 complaint against defendants in federal court, under Case No. 2:13-cv-00450-JTM-PRC ("the 450 Action"); and that matter was assigned to Judge James T. Moody. (*See* certified docket and selected filings in the 450 Action, attached as Exhibit J, pp. 1-2.) In the 450 action, Moreno-Avalos reiterated her previous claims against the same defendants, including allegations of harassment, false statements, tortious interference with a business relationship (between her and her tenants); breach of contract; and stalking. (Ex. J, pp. 7-12, ¶¶ I, III, XI, XII, XXV-XXVI; p. 14, ¶¶ 6-9.)

On February 3, 2014, Judge Springmann entered an order

consolidating plaintiff's 347 Action and 450 Action under Case No. 347. (*See* Ex. I, p. 5, D.E. #26; *see also* Ex. J, p. 4, D.E. 28.)

On May 12, 2014, a Notice of Violation of the Hammond Housing Code was mailed to Moreno-Avalos, notifying her that her property was inspected and deemed an unsafe building, and that it was subject to demolition. The notice further indicated that if Moreno-Avalos did not appear for the hearing on June 12, 2014, the notice would automatically be considered a demolition order. (Ex. C, ¶9 and Ex. C-7 attached thereto.)

On May 28 and June 2, 2014, a notice of the June 12, 2014 demolition hearing was published in the Northwest Indiana Times newspaper. (Ex. C, ¶10 and Exhibit C-8 attached thereto.) On June 12, 2014, Moreno-Avalos did not appear for the scheduled demolition hearing. (Ex. C, ¶11.) The Board affirmed the Notice, which became a demolition order. (Ex. B and Ex. B-7, p. 7, attached thereto.) On June 16, 2014, the Board's findings and order of June 12, 2014, were filed with the Lake County Recorder's office. (Ex. C, ¶12 and Ex. C-9, attached thereto.)

On June 23, 2014, the deadline passed for Moreno-Avalos to file a verified complaint seeking judicial review of the Board's findings and demolition order under Ind. Code 36-7-9-8. Moreno-Avalos did not file a complaint seeking judicial review. (Ex. D, ¶4.)

On August 5, 2014, a notice of bid opening for the demolition

of 551 Gostlin was mailed to all interested persons via certified mail. (*See* Ex. C, ¶13 and Ex. C-10, attached thereto.)

On August 22, 2014, the Hammond Defendants filed their motion for judgment on the pleadings and supporting brief in the 347 Action. (Ex. I, p. 6, DE #37-38.) On January 30, 2015, Judge Springmann entered a final order granting the Hammond Defendants' motion for judgment on the pleadings. A full and final judgment was then entered in favor of the Hammond Defendants, including the City of Hammond and Kim Nordhoff, and against Moreno-Avalos. (Ex. I, pp. 9-12.)

On March 2, 2015, the deadline passed for Moreno-Avalos to appeal the judgment entered in the 347 Action, pursuant to Fed.R.App.P. 4(a)(1)(A). Moreno-Avalos did not appeal the decision. (Ex. I, p. 8.)

In May 2015, the 551 Gostlin Street property was demolished by the City of Hammond. ( DE #45-1, p. 2, ¶7.) On May 25, 2016, the City of Hammond filed its Unsafe Building Demolition Lien regarding the 551 Gostlin Street property with the Lake County Recorder's Office. (*See*. Ex. C, ¶14 and Ex. C-11 attached thereto.)


DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine

dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010). However, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted).

A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary

judgment is proper. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Claim Preclusion

Defendants first argue that claim preclusion bars the claims against them in this action. The Supreme Court has defined the doctrine as follows:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.

*Montana v. United States*, 440 U.S. 147, 153 (1979) (quotations omitted).

The federal law of claim preclusion applies here because the earlier judgment was rendered by a federal court. *See Schor v. Abbott Labs.*, 457 F.3d 608, 615 (7th Cir. 2006). The doctrine of res judicata, also known as claim preclusion, has three requirements under federal law: a final decision in the first suit, a dispute arising from the same transaction (identified by its "operative facts"), and the same litigants (directly or through privity of interest). *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 (7th Cir. 2011).

The parties do not dispute that Judge Springmann's decision on the motion for judgment on the pleadings was a final decision.

This court agrees, as the order directed the Clerk to "enter judgment in favor of the Defendants and against the Plaintiff." (Ex. I at 20.) Nor do the parties dispute whether it involved the same parties or their privies. Again, this Court agrees, as defendant Kim Nordhoff was a defendant in the 347 Action and the 450 Action, and City Hall of Hammond (which was a defendant in the two previous actions as well) is in privity with the defendant in this case, the City of Hammond, Indiana. Rather, the main question here is whether the dispute arises from the same transaction or events.

Plaintiff argues that "the Plaintiff's claims of regulatory taking, first amendment violation, and 1983 violations were not ripe until the city of Hammond took the Plaintiff's property in May of 2015." (DE #84 at 4.) Certainly some of the disputes in this case arose from the same transaction or events (and Plaintiff seems to concede this, in only arguing that her claims of regulatory taking (Count VI), First Amendment violation (Count I), and the 1983 violations (Counts I, II, and III), were not ripe until the City of Hammond actually took the Plaintiff's property in May of 2015).

Indeed, at least two counts in the second amended complaint in this case (Count IV for tortious interference with a commercial contract, and Count VII for harassment) were already alleged by

Plaintiff in the 347 and 450 Actions. In the 347 Complaint, Plaintiff alleges that Inspector Nordhoff was "stalking/harassing Plaintiff" (347 Action, DE #1 at 5), and also alleged harassment in the 450 Action (DE #1 at 4). Judge Springmann specifically found "the Plaintiff's ¶ 1983 claim for harassment must be dismissed on the pleadings" (Ex. I at 16-17.) Plaintiff also previously alleged in the 450 Action that defendants interfered with her tenants (450 Action, DE #1 at 10), which are the same facts she uses now to allege tortious interference with contract. Moreover, the current claim for emotional distress arose out of the same factual allegations (that she was being harassed, unfairly issued citations, and being retaliated against), and could have been brought in the first two lawsuits that were consolidated. At the time of the Judge Springmann actions, Plaintiff had already received a notice of demolition (347 Action, DE #1 at 1), thus the facts underlying the claim of emotional distress already existed, and this claim could have been brought in the underlying federal cases. Because these claims are all based on the same operative facts, and the same event that was alleged in the first two federal lawsuits consolidated in front of Judge Springmann, they are barred by res judicata. *See, e.g., Czarniekci,* 633 F.3d at 549-50 (finding res judicata applicable where "the only differences between the first lawsuit and the second lawsuit are the theories

19

of liability"); *Barr v. Bd. of Trustees of Western Illinois Univ.*, 796 F.3d 837, 840 (7th Cir. 2015) (affirming dismissal on the basis of res judicata where "[b]oth suits arise out of the same main event").

That leaves the Court to analyze whether the regulatory taking claim, First Amendment violation, and 1983 violations are covered by claim preclusion. In other words, whether the claims arise "from the same transaction or the same core of 'operative facts'" as the previous lawsuits. *Czarniecki*, 633 F.3d at 549. "Even if the two claims are based on different legal theories, the 'two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations.'" *Matrix IV, Inc. v. American Nat'l Bank and Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011) (quoting *Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 226 (7th Cir. 1993)). "This test is an outgrowth of the rule that a party must allege in one proceeding all claims and/or counterclaims for relief arising out of a single occurrence, or be precluded from pursuing those claims in the future." *Bertstein v. Bankert*, 733 F.3d 190, 227 (7th Cir. 2013).

Regarding the First Amendment claim violation, the second amended complaint in this case alleges that Inspector Kim Nordhoff requested permission to enter Plaintiff's property, Plaintiff informed her it was owner occupied and she could not enter,

Nordhoff became angry with her, and several citations of building code violations arrived after that. (Sec. Am. Compl. at 3-4.) Plaintiff also alleges that after she complained about the inspector's conduct to the Mayor, she received a letter ordering the demolition of her property. (*Id.* at 4.) Plaintiff made the exact same factual allegations in the 450 Action (DE #1 in 450 Action, at 5). The facts underlying the First Amendment claim therefore were in existence at the time of the previous lawsuits (indeed, they are in the complaint), thus, considering the totality of the circumstances, the First Amendment claim is based upon the same factual allegations and is precluded by claim preclusion.

Next, the Court looks to the section 1983 claims: Count I for deprivation of right to freedom of speech under the color of law; Count II for deprivation of equal protection rights under the color of law; and Count III for deprivation of right to freedom of contract under the color of law. The Court has already discussed how the operative facts behind the right to freedom of speech and freedom of contract are the same as the factual background in the earlier lawsuits, and these claims either could have been, or actually were, litigated by Judge Springmann. With regard to the equal protection claim, Plaintiff again alleges that Nordhoff declared "war on [her] because the Plaintiff had refused entry to Inspector Kim Nordhoff and complained about her trumpet [sic] up

building code violations to the Mayor." (Sec. Am. Compl. at 6.) These factual allegations are the same as the ones already set forth in the previous two lawsuits, and this claim is also barred by claim preclusion.

The last claim is for regulatory taking (Count VI). Plaintiff claims she could not have brought this claim earlier, because her property was not demolished until May 2015 (four months after Judge Springmann's order). Plaintiff cites to cases involving standing, claiming she could not have raised the regulatory taking issue until she had an injury-in-fact, which was the actual demolition of her property. (DE #84 at 4-5.) Defendants retort that at the time of the previous cases, Plaintiff had already received a letter stating that her property would be demolished, so she should have already known what would happen; nevertheless, it was not until after Judge Springmann's opinion that the property was actually razed. This is the strongest of Plaintiff's arguments, as least as far as claim preclusion goes. While it is true that "once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost" *Andersen v. Chrysler Corp.*, 99 F.3d 846, 852 (7th Cir. 1996), "[t]raditional principles of preclusion allow additional litigation if some new wrong occurs." *Supporters to Oppose Pollution, Inc. v. Heritage Group*, 973 F.2d 1320, 1326 (7th Cir. 1992). Similarly, a party can

assert a claim that "could not have been presented in the first case . . . ." *Id.* Even assuming, *arguendo*, that the regulatory taking claim is not barred by claim preclusion, it still fails.

Regulatory Taking

Plaintiff alleges in this second amended complaint that the City of Hammond "imposed regulations on Plaintiff that were so harsh that it caused her a total loss of her property" and that the "reckless imposition of the building code caused the Plaintiff to loss [sic.] all use of her property." (DE 42-1 at 10-11.) In her memorandum in opposition, Plaintiff also argues that the City and the government regulations go "too far" by condemning private property without a specific safety reason, and that the statute is ambiguous and arbitrarily applied to the Plaintiff's property. (DE #84 at 10-11.) These arguments fail.

Regarding the regulations, Indiana Code 36-7-9-5 "allows for the [municipality's] enforcement authority to issue an order requiring action relative to any unsafe premises, including removal of an unsafe building." *409 Land Trust v. City of South Bend*, 709 N.E.2d 348, 351 (Ind. Ct. App. 1999). As Judge Tinder stated:

> "Federal courts are not boards of zoning appeals."
> *River Park, Inc. v. City of Highland Park*, 23 F.3d
> 164, 165 (7th Cir. 1994). So goes the opening line
> of the frequently cited opinion authored by now
> Chief Circuit Judge Frank H. Easterbrook. In *River
> Park*, the Seventh Circuit was critical of
> litigation strategies adopted by those who, for
> whatever reason, believe they stand a better chance

> of obtaining the local licenses, permits or zoning categorization by attaching a "denial of due process" moniker on their challenges to local governmental actions and pursue the matter in federal court." "Labels do not matter. A person contending that state or local regulation of the use of land has gone overboard must repair to state court." *Id.* at 167.

*Leonard's Linen Service v. City of Bloomington*, No. 1:06-cv-21-JDT-WTL, 2007 WL 925546, at *1 (S.D. Mar. 26, 2007).

While it is true that "constitutional infringement during local land use proceedings can occur and redress in federal courts is sometimes appropriate," in this case, the exhibits Plaintiff has submitted with its opposition to the summary judgment motion do not set forth any material facts to create any genuine issues to overcome summary judgment. *Id.* The Pacheco affidavit about the electrical wiring being properly installed in 2000 is so far removed in time, and the Herrera affidavit about being denied a building permit for the roof installation in 2013 also does not defeat summary judgment. As Judge Springmann previously noted in her opinion, "the Plaintiff has not provided any information to show that a contractor provided an opinion to the city about whether proposed repairs would bring the roof into compliance with city codes." (Ex. I at 14.)

Additionally, Defendants argue the regulatory taking claim fails under the principles set forth in *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994) (DE #86 at 10-11). Of course, *Heck* made clear

24

that "a civil rights suit cannot be maintained by a prisoner if a judgment in his favor would 'necessarily imply' that his conviction had been invalid." *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011). That line of reasoning does not fit in this case, where Plaintiff is not a prisoner, and does not have a criminal conviction.

More fitting to this situation is the *Rooker-Feldman* doctrine which prohibits federal district courts from reviewing state court civil judgments, including all claims that are inextricably intertwined with those judgments. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The *Rooker-Feldman* doctrine is based upon recognition of the fact that lower federal courts generally do not have the power to exercise appellate review over state court decisions. In *Rooker*, the Supreme Court held that even if a state court decision was wrong, only the Supreme Court has the power to reverse or modify that judgment, since the jurisdiction of federal district courts is strictly original. *Rooker*, 263 U.S. at 415-16. Similarly, the Supreme Court in *Feldman* held that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *Feldman*, 460 U.S. at 482. This circuit has consistently emphasized that "[t]aken together, *Rooker* and *Feldman* stand for the proposition

that lower federal courts lack jurisdiction to engage in appellate review of state-court determinations." *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993) (quotation omitted). The Supreme Court has noted, however, that the *Rooker-Feldman* doctrine has been construed too broadly by some federal courts. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283 (2005). Post-*Exxon*, the doctrine has been significantly narrowed and only applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (citations omitted).

"In order to determine the applicability of the *Rooker-Feldman* doctrine, the fundamental and appropriate question to ask is whether the alleged injury by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). "A plaintiff may not circumvent the effect of the *Rooker-Feldman* doctrine simply by casting [a] complaint in the form of a federal civil rights action." *Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 825 (7th Cir. 1999).

A Court may "look beyond the four corners of the complaint to

discern the actual injury claimed by the plaintiff." *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 646 (7th Cir. 2011) (citing *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008)). The Seventh Circuit has further noted that, where a claim alleges an independent ground for relief, the *Rooker-Feldman* doctrine does not present a bar when the district court could fashion relief that would not upset the state court's determination. *Id.* at 647 (citing *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 998 (7th Cir. 2005)).

Here, the *Rooker-Feldman* doctrine is applicable. Plaintiff complains of a regulatory taking of property, and that she suffered a "total loss of her property" (Sec. Am. Compl. at 10) – something which could not be undone without affecting the Hammond City Court judgment, and an injury that was actually caused by that judgment. Moreover, the timing is right – the property was demolished before this district court proceeding commenced, and the current lawsuit invites the district court to review and reject that judgment. As the Seventh Circuit has noted, if Plaintiff "was dissatisfied with the state court's decision or justifications, [her] remedy was to appeal, not to start over with a new suit." *Berry v. Wells Fargo Bank, N.A.*, 865 F.3d 880, 883 (7th Cir. 2017).

Because all of the claims against these defendants are barred either by claim preclusion or by *Rooker-Feldman*, the Court need not

reach the other arguments raised by Defendants, including qualified immunity, the *Monell* doctrine, and the statute of limitations.

CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (DE #80) is **GRANTED.** The regulatory taking claim is dismissed because it is barred by the *Rooker-Feldman* doctrine, and the remaining claims against Defendants, City of Hammond, Indiana and Kim Nordhoff, are dismissed because they are barred by claim preclusion. The Clerk is **ORDERED** to **CLOSE** this case.

DATED: November 14, 2017      **/s/ RUDY LOZANO, Judge**
                                             **United States District Court**